IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO MEJIAS, | ) | CASE NO. 3:07 CV 2813 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Roberto Mejias, for supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Mejias had severe impairments consisting of COPD, asthma, sleep apnea, diabetes, musculoskeletal pain, neuropathy, and depression.[1]

The ALJ determined that Mejias had the following residual functional capacity:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours per workday, stand and walk in combination for six hours per workday for a total of eight hours per workday, and occasionally climb ramps and stairs but not ladders, ropes, or scaffolds. He is occasionally able to crawl and stoop and he should avoid unprotected heights and concentrated exposure to temperature and humidity

---

[1] Transcript ("Tr.") at 317.

extremes, as well as dust, odors, fumes, chemicals, and other pulmonary irritants. He is also limited in his ability to feel with his fingers so he may have difficulty with small object handling. In addition, the claimant has limited ability to read and write English and he can have no more than brief and superficial contact with the general public. He is limited to simple, routine tasks that do not involve a fast pace.[2]

According to the ALJ, the above-quoted residual functional capacity precluded Mejias from performing his past relevant work.[3]

Based on an answer to hypothetical questions posed to the vocational expert at the hearing incorporating the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Mejias could perform.[4] The ALJ, therefore, found Mejias not under a disability.[5]

Mejias asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Mejias's challenge to the Commissioner's decision consists of four arguments:

- ALJ's hypothetical(s) to VE are not supported by substantial evidence in that, ALJ either did not include plaintiff's vocationally relevant education functioning level or she adopted an unsupported one; either renders VE testimony fatally flawed and reliance on same not based on substantial evidence.

---

[2] *Id.*

[3] *Id.* at 322.

[4] *Id.* at 323.

[5] *Id.*

- ALJ's failure to properly set forth an accurate hypothetical with specific educational level per regulations.[sic] resulted in vocational testimony at 5th sequential step that is not substantial evidence that defendant can rely upon to meet its burden, and defendant's findings Nos. 6 and 8 are innaccurate[sic], not supported by substantial evidence, and fails to comply with prior federal court remand orders.

- Defendant has failed to properly give recognition to numerous impairments documented in medical record as was done in first decision; simply saying that combination of impairments have been considered does not demonstrate they were; ME testimony is not supported by substantial evidence in record rendering reliance on same, not based on substantial evidence.

- Defendant failed again to recontact treating sources clarifying what appear as medical discrepancies between treating sources and medical expert and state agency review examiner; failure of defendant to give proper weight to treating sources, renders the remand decision, not based on substantial evidence.

I conclude that the ALJ ultimately failed to obtain a reasonable explanation of inconsistencies between the occupational information in the Dictionary of Occupational Titles and the testimony of the vocational expert. I, therefore, recommend that the Court reverse the decision of the Commissioner denying the application for supplemental security income and remand the application for further proceedings. On remand, the ALJ should also reevaluate under proper standards the evidence as to Mejias claimed fibromyalgia impairment and the limitations caused thereby.

## Analysis

**1.    The challenge to the hypothetical to the vocational expert, the residual functional capacity finding, and the finding at step five that a significant number of jobs exist locally and nationally that Mejias could perform**

This portion of the report and recommendation addresses the first two arguments made by Mejias regarding the ALJ's hypothetical to the vocational expert and the findings at step five of the sequential evaluation process based on the vocational expert's testimony.

This is the second round of judicial review of the Commissioner's handling of this application for supplemental security income. The ALJ's first decision found that Mejias was illiterate in English but had a "limited education" as defined in 20 C.F.R. § 416.964(b)(3).[6] Nevertheless, based on the testimony of the vocational expert, the ALJ found at step five of the sequential evaluation process that a significant number of jobs existed in the national economy that Mejias could perform.[7] She, therefore, found Mejias not under a disability.[8]

On judicial review, Magistrate Judge James Gallas found the ALJ's reasoning that Mejias was illiterate in English and nevertheless had a "limited education" as defined by the regulations inconsistent and, for this and other reasons, remanded the case for evaluation of all medical and vocational factors.[9]

---

[6] Tr. at 26.

[7] *Id.* at 25-26.

[8] *Id.*

[9] *Id.* at 373, 375.

After remand, the same administrative law judge eliminated references to illiteracy from her opinion. Instead, she found that Mejias had a limited ability to read and write English without further elaboration.[10] Again, based on the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Mejias could perform and further found him not disabled.[11]

In questioning the vocational expert, the ALJ included in a hypothetical "limited ability to read and write in the English language, such that reading and writing should not be a significant characteristic of the job."[12] The ALJ made no further attempt to quantify what constituted limited ability or a significant characteristic. In response, the vocational expert identified three jobs – garment bagger (DOT 920.687-018), folder (DOT 369.687-018), and hand packager (DOT 559.687-074).[13]

On cross-examination Mejias's attorney attempted to quantify Mejias's reading, writing, and math capability based on test results in the administrative record.[14] The ALJ objected that counsel's hypothetical contained too many variables.[15] The ALJ then attempted to short circuit further examination by asking the vocational expert to assume functional

---

[10] *Id.* at 317.

[11] *Id.* at 323.

[12] *Id.* at 592.

[13] *Id.* at 592-93.

[14] *Id.* at 594.

[15] *Id.*

illiteracy and to testify if that made any difference regarding the jobs previously identified.[16] The vocational expert responded that it did not.[17] The vocational expert further responded that his testimony was consistent with the Selective Characteristics of Occupations in the Dictionary of Occupational Titles ("DOT").[18]

Mejias contends that the ALJ mishandled the matter of his reading and writing ability and his educational level. Further, he maintains that the testimony of the vocational expert is inconsistent with the DOT and that the ALJ failed to resolve these inconsistencies as required by the agency's ruling.

Turning to the administrative record, Alan White, Ph.D., a psychologist, performed a consultative evaluation for the agency. Dr. White administered psychological tests, including the WRAT-4.[19] The test disclosed that Mejias was reading at the second grade level, had sentence comprehension at the 1.9 grade level, could spell at the 1.8 grade level, and did math computation at the 3.5 grade level.[20] These scores place Mejias no higher than the third percentile.[21] These findings are consistent with the observation of the agency's

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 597.

[19] *Id.* at 402-03.

[20] *Id.* at 403.

[21] *Id.*

interviewer, who noted, "cannot write in English/limited reading."[22] Although the ALJ did not discuss what weight, if any, he gave Dr. White's evaluation, she did not question the validity of his test results and made the statement that her findings were "more limiting than Dr. White's opinion...."[23] I must conclude, therefore, that substantial evidence supports the validity of Dr. White's test results.

As counsel for Mejias has correctly pointed out, the Sixth Circuit has held that WRAT test results indicating reading below the third grade level translate to functional illiteracy under the regulations.[24] The ALJ's failure to characterize Mejias as functionally illiterate in the hypothetical to the vocational expert (and, instead, to refer merely to the limited ability to read and write in the English language) was error. As noted above, however, when pressed by counsel's cross examination, the ALJ did pose functional illiteracy to the vocational expert, who responded that it did not change his answer regarding available jobs.

This, however, creates further difficulties. In turning to the DOT, two of the jobs identified – the folder (369.687-018)[25] and the inspector and hand packager (559.687-074)[26]

---

[22] *Id.* at 104.

[23] *Id.* at 318-19.

[24] *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990); *Hammond v. Apfel*, 211 F.3d 1269, 2000 WL 420680, at *6 (6th Cir. 2000) (unpublished table decision).

[25] 1 Dictionary of Occupational Titles 266-67 (4th Ed., Rev. 1991).

[26] *Id.* at 452-53.

– are rated at a General Educational Development Level 2 according to Appendix C of the DOT.  This requires reading ability defined as:

> Passtive vocabulary of 5,000 to 6,000 words.  Read at a rate of 190 to 215 words per minute.  Read adventure books and comic stories, look up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cards and airplanes.

Further, this level provides for writing ability described as "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs."  These capabilities are unquestionably beyond those of one functionally illiterate.

The other job, bagger (902.687-018), has a General Educational Development Level 1 rating.  Appendix C provides that a person at this level should recognize the meaning of 2,500 two or three-syllable words, read at a rate of 95 to 120 words per minute, and compare similarities and differences between words and series of numbers.  The writing ability includes printing simple sentences containing subject, verb, and object and series of numbers, names, and addresses.  It is not clear whether someone functionally illiterate can read and write with these capabilities.

Counsel for Mejias attempted to question the vocational expert regarding these matters but was cut off by the ALJ.  The transcript of the hearing indicates that the ALJ was impatient to conclude the hearing because "it had taken two hours to get through a one-hour hearing."[27]

---

[27] Tr. at 597.

Social Security Ruling 00-4p recognizes that occupational evidence provided by a vocational expert may at times not be consistent with the occupational information provided by the DOT.[28] In those situations "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict."[29] When such conflicts occur, the ALJ "must resolve the conflict by determining if the explanation given by the VE or VS is reasonable provides a basis for relying on the VE or VS testimony rather than the DOT information."[30]

Here, I must conclude that the greater portion of the occupational evidence provided by the vocational expert does conflict with the DOT and that otherwise the potential for conflict is substantial enough that the ALJ should have sought an explanation as to how one functionally illiterate can nevertheless perform jobs having at least a General Educational Development level 1 rating. Although I am reluctant to see a remand given the protracted history of this case, I believe that these inconsistencies and uncertainty must be addressed and resolved.

---

[28] Social Security Ruling 00-4p (Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions," available at http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html at 2.

[29] *Id.*

[30] *Id.*

**2.    The challenge regarding the ALJ's handling of Mejias's claim of fibromyalgia as an impairment and of the opinions of Mejias's treating physicians regarding the limiting effects of that impairment**

Mejias's third and fourth challenges involve his claim of limitations caused by the impairment of fibromyalgia and the opinions of his treating physicians regarding those claimed limitations.

Consistent with my recommendation of a remand, I offer the following observations for a reexamination of the evidence regarding the claimed fibromyalgia impairment and the opinions of the treating physicians as to the limitations caused thereby. I have previously issued two detailed, reported opinions regarding fibromyalgia and the proper evaluation thereof in the social security disability framework – *Wines v. Commissioner of Social Security*[31] and *Swain v. Commissioner of Social Security*.[32] In these decisions I underscore the importance of the opinions of specialists in the treatment of fibromyalgia and the factors to be considered in deciding whether those opinions should receive controlling weight.[33] The *Swain* opinion, in particular, emphasizes that given the nature of fibromyalgia, its severity cannot be assessed looking to the kind of objective medical evidence required of other impairments.[34] Reviewing the ALJ's decision here, the ALJ cites inconsistency with

---

[31] *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954 (N.D. Ohio 2003).

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986 (N.D. Ohio 2003).

[33] *Wines*, 268 F. Supp. 2d at 958-60; *Swain*, 297 F. Supp. 2d at 990-94.

[34] *Swain*, 297 F. Supp. 2d at 989-93.

objective medical evidence and the lack of statements of specific limitations as the grounds for rejecting the treating physicians's opinions.[35]

As to inconsistencies with objective medical evidence, on remand the ALJ should reevaluate the administrative record with the following perspective:

> There is no laboratory test for the disease's (fibromyalgia's) presence or severity. Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions. Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult.[36]

If, on reexamination of the medical evidence and the opinions of the treating physicians, the ALJ decides that more detailed evaluation of specific limitations is necessary, then the ALJ has the discretion to either recontact the treating sources or to order a consultative examination.

## Conclusion

Based on the foregoing, I recommend that the Court reverse the decision of the Commissioner denying Mejias application for supplemental security income and remand the application for reconsideration of the finding as to residual functional capacity and at step five of the sequential evaluation process.

Dated: January 16, 2009            s/ William H. Baughman, Jr.
                                   United States Magistrate Judge

---

[35] Tr. at 319.

[36] *Swain*, 297 F. Supp. 2d at 990.

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[37]

---

[37] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).