IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roberto Mejias,　　　　　　　　　　　　　　　　Case No. 3:07CV2813

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　ORDER

Commissioner of Social Security,

　　　　　Defendant

　　　　In this appeal, I review defendant Commissioner of Social Security's [Commissioner] final decision denying plaintiff Roberto Mejias' claim for supplemental security income [SSI] under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382(c). Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

　　　　The Commissioner objects to the Magistrate Judge's Report and Recommendation [Magistrate's Report] [Doc. 36] which recommends remand for further proceedings. [Doc. 37]. Based on a de novo review of the record, I overrule the Commissioner's objections.

### Medical History

　　　　Mejias has multiple impairments including chronic obstructive pulmonary disease, asthma, sleep apnea, diabetes, musculoskeletal pain, neuropathy and depression. Other opinions and briefs

1

lay out Mejias' ailments in detail. I, therefore, will only describe the medical history of Mejias' claimed fibromyalgia and limited intellectual capacity, the two impairments relevant to Defendant's objections.

Dr. Alan White, Ph.D., licensed psychologist, evaluated Mejias at the request of the Social Security Administration [Administration]. Through the Wechsler Adult Intelligence Scale III [WAIS-III] and Wechsler Memory Scale III [WMS-III], Dr. White found Mejias's intelligence quotient [IQ] and memory scores to range from 73 to 76 and 55 to 74, respectively. [R. at 402-03].

Mejias' first language is Spanish. He can read parts of the newspaper, but cannot follow television programs. Dr. White evaluated Mejias' ability to read, write and spell with the Wide Range Achievement Test 4 [WRAT4] and determined that Mejias could read at a 2.0 grade level, comprehend sentences at a 1.9 grade level and spell at a 1.8 grade level. [*Id*.].

With regard to fibromyalgia, Mejias contends that he suffers from painful leg and hand cramps as often as twice a day, lasting from twenty minutes to four hours. One of Mejias' treating physicians, Dr. Mahmoud R. Darr, opined that Mejias "most likely [has] fibromyalgia," [R. at 411] basing this opinion on Mejias' multiple tender points and inability to tolerate physical therapy because of the pain. Physicians from the Medical College of Ohio, including Dr. Mutgi, also examined Mejias and found some infrequent reports of positive tender points consistent with fibromyalgia. [R. at 196, 322]. Dr. H. Schecondnic's records also note that Mejias had fibromyalgia. [R. at 157].

Medical expert Dr. Frank Cox, M.D., however, testified that Mejias does not have fibromyalgia. [R. at 572-73, 582]. Although he did not know the reason for Mejias' pain, Dr. Cox

noted that fibromyalgia is rarely seen in males and rejected its evaluation through "trigger points." [*Id.*].

## Procedural History

Mejias filed an application for SSI on August 8, 2001, which the Administration denied both initially and on reconsideration. Administrative Law Judge [ALJ] Yvonne K. Stam denied his application on February 26, 2004.

The ALJ found Mejias to be illiterate in English and to have a "limited education" as defined by 20 C.F.R. § 413.964(b)(3). On December 1, 2004, the Administration's Office of Hearing and Appeals [Appeals Council] denied Booth's request for review, thereby rendering the ALJ's decision the final judgment of the Commissioner.

Mejias sought judicial review of the Administration's opinion. On March 27, 2006, Magistrate Judge James Gallas remanded the Commissioner's decision to the Appeals Council, who then remanded it to the ALJ. Among other reasons, the Magistrate explained that by finding Mejias to be "illiterate" and to have a "limited education," the ALJ rendered two inconsistent conclusions. [R. at 26].

On August 22, 2006 and March 21, 2007, the ALJ conducted additional administrative hearings, and on May 18, 2007, once again denied Mejias' application. In her opinion, the ALJ eliminated references to illiteracy and found, instead, that Mejias had a limited ability to read and write English. The ALJ did, however, opine that Mejias' limitations were "more limiting than Dr. White's opinion." [R. at 319]. [1]

---

[1]In the Sixth Circuit, an individual who scores below a third grade reading level on the WRAT is deemed "functionally illiterate." *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir.1990); *Hammond v. Apfel*, 2000 WL 420680, * 6 (6th Cir.) (unpublished

3

Mejias then sought review from the Appeals Council. The Appeals Council denied Mejias' request, and Mejias subsequently sought judicial review. On January 16, 2009, Magistrate Judge William G. Baughman, Jr. issued a Report and Recommendation recommending that I remand the Commissioner's decision.

According to the Magistrate, the ALJ violated Social Security Ruling 00-4p [SSR 00-4p or Ruling] [2] by failing to obtain an explanation of the inconsistencies between occupational information provided by the vocational expert [VE] and the Dictionary of Occupational Titles [DOT]. On remand, the Magistrate recommends that the ALJ also reevaluate, under proper standards, the evidence supporting Mejias' claim of fibromyalgia and limitations caused thereby.

The Commissioner objects to both of these findings.

### 1. Conflicts Between VE's Testimony and DOT

Defendant objects to the Magistrate's finding that Mejias' case must be remanded pursuant to SSR 00-4p. I overrule this objection and affirm the Magistrate's decision.

Under SSR 00-4p, as part of their responsibility to "fully develop the record," ALJs must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles." SSR 00-4p. This Ruling places the onus on ALJs to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.*

---

disposition). Notably, Mejias scored at a 2.0 grade level on the WRAT. Thus, by finding Mejias to have a limited ability to read and write English and noting Mejias' limitations to be more severe than suggested by Dr. White, the ALJ repeated her inconsistent findings.

[2]

The text of SSR 00-4p is available at:
http://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html

If, however, the VE fails to identify any such conflict, the ALJ has no responsibility to identify or resolve a conflict, unless it is otherwise apparent. *See Ledford v. Astrue*, 2008 WL 5351015, *10 (6th Cir.) (unpublished disposition); *Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir. 2006) (unpublished disposition) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."); *Pena v. Comm'r of Soc. Sec.*, 2008 WL 3200253, * 5 (N.D.Ohio); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir.2002) (requiring "an explanation only if the discrepancy was 'identified'-that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation").

During the administrative hearing on March 21, 2007, the ALJ posed a hypothetical to VE Charles McBee. The hypothetical described an individual with a "limited ability to read and write in the English language, such that reading and writing should not be a significant characteristic of the job." [R. at 592.]. Based on this characterization, the VE identified three potential positions–garment bagger [DOT 920.687-018], folder [DOT 369.687-018] and hand packager [DOT 559.687-074].

Mejias' attorney cross-examined the VE and attempted to ascertain whether the VE's testimony would remain the same if claimant was "functionally illiterate." During this examination, the ALJ told the VE to assume that the individual was functionally illiterate and asked if that altered his conclusion. The VE responded that it did not. Mejias' attorney also asked if the VE's findings were consistent with the DOT, to which the VE answered affirmatively.

Mejias first contends that the ALJ violated SSR 00-4p by failing to ask the VE whether his conclusion conflicted with the DOT. I disagree. Although the ALJ technically bears the burden of

5

asking this question, I see no reason to fault the ALJ just because Mejias' counsel asked the question first. Even as Mejias' attorney asked, he said "And, I guess I'll ask the question for the Judge because I know she would ask it." [R. at 596]. As previously noted, the VE responded that his testimony was consistent with the DOT.

This case, therefore, turns on whether the inconsistencies between the VE's testimony and DOT were apparent. If such inconsistencies existed, but the claimant's attorney failed to identify them during the administrative hearing, courts typically find that the ALJ had no obligation to inquire further and do not remand the case. *See*, *e.g.*, *Martin*, *supra*, 170 Fed.Appx. at 374 ("Because Martin did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved.").

If the claimant's attorney emphasized inconsistencies during cross-examination, however, courts have found that the ALJ must investigate the inconsistencies, and failure to do so can warrant remand. *See Overman v. Astrue*, 546 F.3d 456, 462-63 (7th Cir. 2008) (finding that the ALJ failed in his duty to obtain a reasonable explanation for the apparent conflict because Overman elicited statements seriously calling the VE's reliability into question during his cross-examination).

Here, as Mejias' attorney started to ask questions focusing on each position's General Educational Development [GED] to determine if the VE's testimony truly conformed to the DOT, the ALJ interrupted him. The ALJ stated: " – – are you aware it's noon, you have taken, it has taken two hours to get through a one hour hearing? If you have anything else that's significant I'd like to get it done right away." [R. at 597].

6

Mejias argues that by cutting off his attorney, the ALJ prevented him from making the inconsistencies between the VE's testimony and DOT apparent, thereby breaching her duty to develop the record and comply with SSR 00-4p. I agree.

The Commissioner argues that unlike in *Martin*, Mejias failed to alert the ALJ to the inconsistencies in the VE's testimony. This argument is off the mark. Unlike in *Martin*, by sharply encouraging Mejias' attorney to end his cross-examination, the ALJ prevented Mejias from highlighting inconsistencies in the VE's testimony.

Mejias asserts that had the ALJ permitted his counsel to ask the VE to explain the proper education classifications and inquire into how an illiterate individual could perform the enumerated jobs, an apparent conflict would have arisen. Because his counsel's questions were leading in that direction by asking about their GED levels, Mejias makes a reasonable inference.

I, therefore, find that the ALJ breached her duty to develop the record, precluding an apparent conflict from being known. *Cf. Oliver ex rel. Oliver v. Apfel*, 2000 WL 34032755, * 14 (N.D.Iowa) (finding that the ALJ did not breach his duty to fully and fairly develop the record because claimant's attorney said "[t]hat's all I have" before the ALJ ended the proceeding).

Even when an ALJ violates SSR 00-4p, however, courts do not find remand necessary if the error was harmless. *See Kelly v. Comm'r of Soc. Sec.*, 2008 WL 2950106, * 6-7 (E.D.Mich) (deciding not to remand case because error was harmless); *Stine v. Comm'r of Soc. Sec.*, 2008 WL 1837357, * 4-5 (remanding case because of "unresolved potential inconsistency in the evidence that should have been resolved").

Here, the ALJ's error was not harmless–a conflict existed between the VE's testimony and the DOT.

7

The positions of folder and hand packager are rated at a GED Level Two, requiring the following reading ability: "Passive vocabulary of 5,000 to 6,000 words. Read at a rate of 190 to 215 words per minute. Read adventure books and comic stores, look up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cards and airplanes." Appendix C, § III to DOT. Positions at this level also require the ability to write "compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." *Id*. An individual who is functionally illiterate cannot perform such tasks, and thus, the VE's conclusion is inconsistent with the DOT.

Furthermore, there is a potential conflict regarding the position of a bagger. The DOT categorizes baggers with a GED Level One, requiring employees to "[r]ecognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers." *Id*. As for writing, employees must be able to "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." *Id*. Although not as clear of a conflict, it is unresolved whether a functionally illiterate individual can perform work at this level.

The ALJ breached her duty to fully develop the record by prematurely ending the hearing, and consequently, I affirm the Magistrate's recommendation to remand.³

### 2. Treating Physician's Finding of Fibromyalgia

---

³I understand the backlog of cases pending before an ALJ. Given the importance of each SSI determination, however, the ALJ must adequately, fairly and fully develop the record. Moreover, this case has already been remanded on the issue of illiteracy–thus, the ALJ should have had a heightened level of sensitivity surrounding this issue.

Defendant objects to the Magistrate's finding that the ALJ improperly rejected treating physicians' opinion that Mejias had fibromyalgia. I overrule this objection and affirm the Magistrate's decision.

The ALJ decided not to give "great" weight to Mejias' treating physicians' opinions because they were "not consistent with the objective medical evidence" nor did they "contain statements of specific limitations which can be compared to the medical evidence." [R. at 319].

The nature of fibromyalgia, however, renders it a difficult disease to diagnose. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988) (finding no objective tests to conclusively confirm a diagnosis of fibromyalgia). As the Magistrate pointed out in *Swain v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 958 (N.D. Ohio 2003),

> There is no laboratory test for the disease's presence or severity. Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions. Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult.

Thus, the ALJ cannot reject a treating physician's opinion based on failure to rely on objective tests, if such tests do not exist. *See also Pena*, *supra*, 2008 WL 3200253, at *3 (quoting *Runyon v. Apfel*, 100 F.Supp.2d 447, 450 (E.D.Mich.1999), finding "that a doctor's failure to 'substantiate his limitations with objective medical findings' and use of findings 'inconsistent with the predominantly normal objective medical findings of other physicians' is usually a valid basis for discounting an opinion, but the disease fibromyalgia 'is different'"); *Wines v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 958-60 (N.D. Ohio 2003); *Sachet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

Despite Defendant's claims to the contrary, the Magistrate does not suggest that the ALJ rely only on claimant's assertions. *See* 20 C.F.R. § 404.1529(b). Here, multiple treating physicians,

9

including Dr. Darr, opined that Mejias has fibromyalgia. Further, they do not base their opinions solely on Mejias' claims; for instance, Dr. Darr noted that Mejias had multiple tender points.

I, therefore, affirm the Magistrate's recommendation that the Commissioner's opinion be remanded on this ground as well. Upon remand, the ALJ should rely on the principles noted in *Wines, supra*, 268 F.Supp.2d at 958-60 and *Swain*, *supra*, 268 F.Supp.2d at 990 to properly reassess whether Mejias has fibromyalgia, and if so, the limitations it caused.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT Defendant's objections to the Report and Recommendation of the United States Magistrate Judge be, and the same hereby are, overruled.

So ordered.

> s/James G. Carr
> James G. Carr
> Chief Judge